```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

JODI LYNN WALDOR,                )
                                 )
          Plaintiff,             )
                                 )
     vs.                         )    Civil Action No. 13-1671
                                 )
CAROLYN W. COLVIN, ACTING        )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
          Defendant.             )


O R D E R

AND NOW, this 30th day of December, 2014, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 19) filed in the above-captioned matter on June 5, 2014,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 15) filed in the above-captioned matter on April 15, 2014,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further

1

evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

## I. **Background**

On January 27, 2011, Plaintiff Jodi Lynn Waldor filed a claim for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, Plaintiff claimed that she became disabled on February 10, 2010, due to occipital neuralgia/headaches, degenerative disc disease, diabetes, anxiety disorder, and mood disorder. (R. 12).

After being denied initially on May 20, 2011, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on August 30, 2012. (R. 154-55, 84-89, 29-66). In a decision dated September 7, 2012, the ALJ denied Plaintiff's request for benefits. (R. 7-24). The Appeals Council declined to review the ALJ's decision on September 23, 2013. (R. 1-4). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support

the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment

3

that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 404.1520. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 404.1520(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). If the claimant fails to show that his or

4

her impairments are "severe," he or she is ineligible for disability benefits.  If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment.  See 20 C.F.R. § 404.1520(d).  If a claimant meets a listing, a finding of disability is automatically directed.  If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. § 404.1520(e), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).  If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability.  See 20 C.F.R. § 404.1520(g).  In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience.  See id.  The ALJ must further analyze the cumulative effect of all the claimant's impairments in

determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

III. **The ALJ's Decision**

In the present case, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through March 31, 2015. (R. 12). Accordingly, to be eligible for Disability Insurance Benefits, Plaintiff had to establish that she was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset of disability. (R. 12). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had several severe impairments, specifically, occipital neuralgia/headaches, degenerative disc disease, diabetes, anxiety disorder, and mood disorder. (R. 12). The ALJ further concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 12-14).

The ALJ next found that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she would be limited to jobs requiring the performance of only routine, repetitive tasks, with only occasional interaction

with the public, co-workers and supervisors. (R. 14-22). At Step Four, the ALJ found, based on this RFC, that Plaintiff had established that she is incapable of returning to her past employment, so he moved on to Step Five. (R. 22). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as ticket checker, surveillance monitor and addresser. (R. 22-23, 63-64). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 23-24).

**IV. <u>Legal Analysis</u>**

Plaintiff raises several arguments as to why she believes that the ALJ erred in formulating her RFC and in finding her to be not disabled. While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that remand is warranted in this case. Specifically, the Court finds, first, that the ALJ erred by providing an insufficient analysis of whether Plaintiff's impairments meet a listing that would render her disabled under the Act. Additionally, the Court finds that the ALJ, in determining Plaintiff's RFC, failed to provide an adequate explanation for his evaluation of certain medical

7

opinions in the record. Accordingly, the record is insufficient to support the ALJ's decision, and the Court will remand the case for further consideration.

One of Plaintiff's claims is that the ALJ erred in failing to properly analyze her back disorder—degenerative disc disease—under Listing 1.04A, 20 C.F.R. Part 404, Subpart P, Appendix 1, at Step Three of the sequential analysis. Plaintiff asserts that the record establishes that her condition may, in fact, meet that listing. Specifically, Listing 1.04 applies to "*Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root . . . or the spinal cord." Listing 1.04A further provides that disorders of the spine are accompanied by "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

As previously noted, the ALJ found that degenerative disc disease was one of Plaintiff's severe impairments, so Plaintiff did, indeed, have a condition that could potentially qualify as a disorder of the spine under the listings. Plaintiff argues that the record establishes that her condition meets the 1.04A

8

requirements. Nonetheless, rather than specifically discussing whether Plaintiff's degenerative disc disease qualified as a disorder of the spine pursuant to Listing 1.04A, the ALJ merely stated that he had considered Plaintiff's degenerative disc disease under the general heading, Section 1.00 (Musculoskeletal System). The ALJ discussed Plaintiff's symptoms and treatment in the care of various medical professionals, but he ultimately found that the requirements of the listings were not met or medically equaled. However, since the ALJ did not specify that he had addressed the particular elements of Listing 1.04A, he failed to clearly tie this listing into his discussion of Plaintiff's degenerative disc disease, and his analysis is incomplete. His general analysis was simply insufficient to address whether the medical findings could have met the listing. While the record may ultimately provide a solid basis for finding that Plaintiff's degenerative disc disease does not meet the listing in question, there is enough evidence from Plaintiff's treating physicians to necessitate a more focused analysis as to the application of Listing 1.04A.

To the extent, though, that Plaintiff asks this Court to find, at this point, that she plainly meets Listing 1.04A, and that the ALJ's decision should be reversed and benefits awarded, the Court cannot find that substantial evidence in the record as a whole indicates that Plaintiff has met the listing, or that

she is disabled and entitled to benefits. See Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984). In arguing that her "back disorder may meet the listing at 1.04A," Plaintiff points to the reports of her primary care physician, Dr. John Rocchi, M.D., which she says "clearly show reduced range of motion in Plaintiff's lumbar spine and positive straight leg raising tests in Plaintiff's left leg." (Doc. No. 16 at 30). Defendant, on the other hand, asserts that the record does not reveal that all of the requirements of the listing are met, as is necessary to reach the conclusion that Plaintiff is disabled. (Doc. No. 20 at 26-27). Since the record is, at best, ambiguous as to whether Plaintiff can establish that she has met Listing 1.04A, the Court leaves the initial analysis of this particular issue, in light of the admittedly severe impairment of Plaintiff's degenerative disc disease, to the ALJ. See Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (noting that "'[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based'" (quoting SEC v. Chenery Corp., 318 U.S. 80, 87 (1943))).

Additionally, Plaintiff asserts that the ALJ improperly disregarded the opinions of her treating physicians in reaching his conclusions. In particular, Plaintiff claims that the ALJ failed to provide adequate reasons for rejecting the opinions of

10

both Dr. Rocchi (referenced above) and Dr. Manasi Gahlot, M.D., Plaintiff's neurologist.  In support of her argument, Plaintiff points to several official forms in the record, wherein her doctors declared her to be incapacitated, along with her doctors' treatment notes.  Specifically, as early as March 30, 2010, Dr. Gahlot, who had been treating Plaintiff for her headaches, completed a Medical Assessment Form for the Pennsylvania Department of Public Welfare, in which he indicated that Plaintiff was temporarily incapacitated due to her occipital neuralgia (or, possibly, trigeminal neuralgia). (R. 250-52).  Dr. Rocchi had been treating Plaintiff for various medical issues, and, on October 13, 2010, he completed a similar form in which he indicated that Plaintiff had been diagnosed with occipital neuralgia and was temporarily incapacitated. (R. 247-49).  Further, on October 3, 2011, Dr. Rocchi stated, in an Employability Re-assessment Form for the Pennsylvania Department of Public Welfare, that Plaintiff was permanently disabled, and he listed her diagnoses as occipital neuralgia, diabetes, hypertension, and hyperlipidemia.  (R. 469-70). Finally, Dr. Rocchi found, in a Physical Capacity Evaluation on August 24, 2012, that Plaintiff was limited to sitting for a total of four hours in an eight-hour workday and standing for a total of two hours in an eight-hour workday, that she would have to lie down for a total of two hours in an eight-hour workday,

and that she could only lift up to five pounds, with no bending, climbing, stooping, balancing, crouching, kneeling or crawling. (R. 576-78). The ALJ, however, ultimately rejected these opinions and declined to include these limitations in Plaintiff's RFC, although he provided no meaningful explanation for his decisions in this regard.

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. § 404.1545(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion,

citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Although the ALJ acknowledged the opinions of Dr. Gahlot and Dr. Rocchi in his decision and explained that, after consideration, he was giving them little weight, his discussion was simply insufficient to permit meaningful review. For example, the ALJ stated that Dr. Rocchi's opinions that Plaintiff "is permanently disabled are not supported by the objective medical evidence . . . and were apparently based upon a face value acceptance of the claimant's subjective complaints." (R. 21). Plaintiff, however, notes in her brief, among other things, that "Dr. Rocchi's physical examination of Plaintiff indicates a positive straight leg and cross leg raise test on the left side, decreased range of motion of the back and back with flexion, extension, and rotation." (Doc. No. 16 at 23). However, as Plaintiff points out in her brief, although the ALJ called diagnostic testing "essentially unremarkable, the MRI of the lumbar spine which Dr. Rocchi ordered . . . indicated a mild disc bulging at L4-5 left paracentral and far lateral more prominent than on the right with some mild to moderate left neural foraminal narrowing." (Doc. No. 16 at 23). Moreover, Plaintiff states that the ALJ relied upon Dr. Rocchi's comment that Plaintiff's low back was "stable" on May 30, 2012, but he ignored altogether Dr. Rocchi's later indications that cortisone

13

shots were not helping and were actually making her back pain worse. (Doc. No. 16 at 23). The ALJ provided no meaningful discussion as to his consideration of these objective findings in reaching his conclusions.

Not only was the ALJ's discussion of Dr. Rocchi's opinion quite brief, he declined to discuss Dr. Gahlot's opinion at all. As noted, both Dr. Gahlot and Dr. Rocchi opined that Plaintiff had extensive limitations, but the ALJ failed either to include those limitations in his RFC or to discuss why he omitted them completely. Other than providing a brief statement as to each impairment, the ALJ simply failed to adequately explain how these limitations were inconsistent with the other evidence in the record. Thus, the ALJ's comments concerning the opinion evidence do not allow the Court to determine the basis for his decision to omit these limitations from the RFC.

Accordingly, while the ALJ was by no means required to adopt straightaway all of the limitations found by Plaintiff's treating physicians, he was required to provide an adequate explanation for his conclusion that they should be rejected. Indeed, the Court expresses no opinion as to whether the ALJ's RFC determination regarding Plaintiff's impairments could be

supported by the record. It is, instead, the need for further explanation that mandates the remand on this issue.[1]

## V. **Conclusion**

In short, the record simply does not permit the Court to determine whether substantial evidence exists to support the ALJ's determination at Step Three that Plaintiff does not meet a listing. Additionally, the ALJ failed to provide an adequate explanation for his evaluation of the opinions of Plaintiff's treating physicians. Accordingly, the Court finds that substantial evidence does not support the ALJ's decision. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/Alan N. Bloch<br>United States District Judge

ecf: Counsel of record

---

[1] Although the Court takes no position as to Plaintiff's remaining issues, the ALJ should, of course, ensure that proper weight be accorded to the various opinions and medical evidence presented in the record, and he should verify that his conclusions concerning Plaintiff's RFC are adequately explained, in order to eliminate the need for any future remand.